578 S.E.2d 724

**In the Matter of Former Jasper County Magistrate Joyce Lynn LEAVELL, Respondent.**

**No. 25610.**

Supreme Court of South Carolina.

Submitted March 11, 2003.

Decided March 24, 2003.

Henry B. Richardson, Jr., and James G. Bogle, Jr., of Columbia, for the Office of Disciplinary Counsel.

Charles B. Macloskie, of Beaufort, for Respondent.

PER CURIAM.

In this judicial disciplinary action, respondent, a former Jasper County Magistrate, admits she committed acts of misconduct in violation of the Code of Judicial Conduct, Rule 501, SCACR, consents to a public reprimand, has agreed to resign and agreed not to apply for any judicial office in the State of South Carolina without the prior consent of this Court.[1]  A Subpanel of the Commission on Judicial Conduct recommended respondent be publicly reprimanded and prohibited from applying for a judicial position within the unified judicial system of the State of South Carolina without prior consent of this Court.  The Full Panel of the Commission on

---

1. Respondent submitted her resignation to the Governor of South Carolina.  Respondent's resignation was accepted and became effective October 25, 2002.

Judicial Conduct adopted the Subpanel report in its entirety. We agree respondent has committed judicial misconduct and that a public reprimand, the most severe sanction we are able to impose in these circumstances, is the appropriate sanction.

## *Facts*

### I. Bond Matter

Respondent received a $400 bond payment from an individual. On or about June 25, 1999, the individual executed an "Assignment of Bond," assigning the $400 to his attorney. However, respondent failed to promptly transmit the payment to the Jasper County Clerk of Court.

On or about March 7, 2000, a representative from the Clerk of Court's Office spoke with respondent, who promised to comply with the "Assignment of Bond." Instead, respondent submitted a check for $400, drawn on her magistrate's account, to the Clerk of Court. Between May 18, 1999, and March 14, 2000, respondent made five deposits into her magistrate's account, each of which contained entries for cash in excess of $400. None of the deposit slips identified the source of the cash. The first of the deposit slips, which could have included the bond money at issue, was dated November 22, 1999. By not identifying the cash entries on the three deposit slips dated after November 9, 1999, respondent failed to follow the provisions of this Court's November 9, 1999 order regarding financial record keeping.

### II. Warrant Matter

On August 25, 2000, respondent accepted $250 from an individual to withdraw a warrant. Respondent issued a receipt identifying the purpose of payment as "Court Cost/Return Warrant."

During questioning by Disciplinary Counsel pursuant to a Notice to Appear, respondent testified she often charged varying amounts to people who wished to withdraw arrest warrants. The amounts varied from $50, for a simple assault case, up to $250. There is no authority, statutory or administrative, to charge such a fee.

## III.  County Audit Matter

An audit of Jasper County was conducted for the fiscal year ending June 30, 2000.  The audit included respondent's office. The audit noted the following deficiencies in respondent's office:  (a) no cash disbursements or cash receipts were maintained;  (b) deposits were entered on check stubs;  (c) bank reconciliations were not prepared;  (d) old outstanding checks were not investigated;  and (e) monthly remittance reports were not made available.  The effect of these conditions was a lack of accounting procedures that provided no controlled environment for accountability.

## IV.  Disqualification Matter

Before becoming a magistrate in 1995, respondent worked as a legal secretary for Gary Brown, who practiced in Jasper County until retiring in 1999.  In 1998, respondent acquired from Mr. Brown a 1975 Rolls–Royce four-door sedan, which Mr. Brown had purchased in 1992 for $22,500.  Mr. Brown appeared before respondent twice in 1999, representing the landlord in a landlord-tenant matter, and a defendant at a preliminary hearing.  Respondent did not disclose on the record at either of the hearings the receipt of the vehicle from Mr. Brown, nor her employment with him.

## V.  Vehicle Matter

Respondent, as Chief Magistrate in Jasper County, prepared a Court Order and Magistrate's Bill of Sale, dated July 29, 1999, for the aforementioned vehicle.  The document was signed by Judge Donna D. Lynah, a part-time magistrate in Jasper County at the time.[2]  Respondent was never a proprietor, owner, or operator of a business where vehicles are stored, garaged, or repaired, nor was she a person who repaired vehicles or furnished material for their repair or storage.  Only individuals in those capacities may apply for a magistrate sale of a vehicle pursuant to S.C.Code Ann. § 29–15–10 (1991).  The document indicated that public notice had

---

2.  On October 6, 2000, Judge Lynah was placed on interim suspension for her role in this matter.  *In re Lynah*, 342 S.C. 617, 539 S.E.2d 60 (2000).  On June 11, 2001, this Court suspended Judge Lynah for nine months, retroactive to the date of her interim suspension.  *In re Lynah*, 345 S.C. 414, 548 S.E.2d 218 (2001).

been given that the vehicle would be sold pursuant to section 29–15–10 for "Accrued Charges," in the amount of $3,000, allegedly incurred by respondent. The Magistrate's Bill of Sale stated the vehicle had been sold to respondent for $30 on September 2, 1999, at a public auction. The "Accrued Charges" listed on the Magistrate's Bill of Sale were charges incurred by respondent for repairs made on the vehicle; however, the person who allegedly made the repairs was not a party to the Court Order and Magistrate's Bill of Sale.

Section 29–15–10 requires that written notice be given to the owner of the vehicle prior to sale, that the magistrate insure that the owner has been notified prior to the vehicle being sold, and that the magistrate have advertised the vehicle for at least fifteen days by posting a notice in three public places. None of these requirements were met.

Respondent represented to Judge Lynah that Mr. Brown was aware of respondent's request for a Magistrate's Title and that a Magistrate's Title for the vehicle was necessary because Mr. Brown had misplaced the title to the vehicle. Without Mr. Brown's knowledge or consent, respondent asked Judge Lynah to conduct a judicial sale of the vehicle and to issue a Magistrate's Title to the vehicle in respondent's name. Respondent paid no money to Judge Lynah in exchange for a Magistrate's Bill of Sale. No fee of $30 was paid to Judge Lynah for a public auction, as maintained by respondent, and no public auction was held. However, respondent falsely represented to the Department of Revenue that she had paid $30 for the vehicle and, accordingly, paid casual excise tax in the amount of $1.50. Respondent then applied to the Department of Public Safety to have the vehicle titled in her name. A certificate was issued to respondent on September 8, 1999.

Mr. Brown brought a claim and delivery action against respondent, and others, to retrieve the vehicle. Mr. Brown executed an affidavit for claim and delivery stating that he was the lawful and registered owner of the vehicle and had not given, nor sold, it to respondent. Following a hearing on October 11, 2000, a circuit court judge issued an order directing respondent to return the vehicle to Mr. Brown without delay. The case was later settled. Mr. Brown agreed to dismiss the action with prejudice in exchange for respondent

returning permanent possession and title of the vehicle to Mr. Brown. When respondent failed to return the title, after verbal requests and a written demand, counsel for Mr. Brown filed a Motion to Compel Settlement. Thereafter, respondent signed title of the vehicle over to Mr. Brown.

## VI. Disclosure Matter

Respondent failed to disclose receipt of the aforementioned vehicle in her Rule 501, SCACR, disclosure statements for the calendar years 1998 and 1999.

### *Law*

Respondent has violated the following Canons of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1(A) (a judge shall uphold the integrity and independence of the judiciary); Canon 2 (a judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities); Canon 3(A) (a judge shall follow certain standards in the performance of the judge's duties); Canon 3(C)(1) (a judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business); Canon 3(C)(2) (a judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties); Canon (3)(C)(3) (a judge with supervisory authority for the judicial performance of other judges shall take reasonable measures to assure the proper performance of their judicial responsibilities); Canon 3(E)(1) (a judge shall disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned); Canon 3(F) (a judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and ask the parties to consider whether to waive jurisdiction; if the parties agree the judge should not be disqualified, and the judge is willing to participate, the judge may participate in the proceedings, but the agreement shall be incorporated in the record of the proceeding); Canon 4(A)(1) (a judge shall conduct all of the judge's extra-judicial activities so that they

do not cast reasonable doubt on the judge's capacity to act impartially as a judge); Canon 4(A)(2) (a judge shall conduct all of the judge's extra-judicial activities so that they do not demean the judicial office); Canon 4(D)(1) (a judge shall not engage in financial and business dealings that may reasonably be perceived to exploit the judge's judicial position); Canon 4(D)(5) (a judge shall not accept a gift, bequest, favor or loan from anyone except in limited circumstances); Canon 4(H) (a judge may receive compensation and reimbursement of expenses for the extra-judicial activities permitted by this Code if the source of the payments does not give the appearance of influencing the judge's performance of judicial duties or otherwise give the appearance of impropriety, but the judge must report the receipt of the compensation). By violating these Canons, respondent has also violated Rule 7(a)(1) of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR.

### *Conclusion*

Respondent has fully acknowledged that her actions were in violation of the Code of Judicial Conduct and the Rules for Judicial Disciplinary Enforcement. We agree with the Commission on Judicial Conduct that a public reprimand is the appropriate sanction because it is the only sanction that can be imposed in this matter given the fact that respondent has resigned her position as a magistrate. Respondent is hereby publicly reprimanded for her conduct. Moreover, respondent shall not hereafter seek another judicial position in South Carolina unless first authorized to do so by this Court. Finally, respondent is hereby ordered to pay the costs of these disciplinary proceedings to the Commission on Judicial Conduct within thirty days of the date of this opinion.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.